Okay, the last case this morning is Hurst v. Board of Fire and Police Commission of the City of Clinton. That's case number 4100964 for the appellant, Shane Voiles. For the appellee, Stephen Myers and Nick Sikwinski. Have you two split your time with the clerk? We did not indicate that we split our time with the clerk. By far, we split our time. Thank you, Your Honor. Good morning, Captain. The order which brings us here today was an order from the trial court dismissing the entire cause or granting all of the arguments raised by the defendants. But it was sort of a peculiar order in that it referenced the amended complaint and said it dismissed the entire cause but didn't really discuss the original complaint. And the primary issue which brings us here today is whether or not the administrative review amendment that I filed as part of an amended complaint... Well, didn't you file a third count that essentially had nothing to do with the first two counts which comprised the original complaint? I did file a third count. It involved... I would necessarily agree that it had nothing to do with the prior two counts. Okay. The original complaint was directed, as far as I know, at the one and only fire and police commission hearing conducted in 2009, I believe it was, by the city of Clinton. Count three was basically an appeal of that decision. Same subject matter... I don't know of any legal reason to conclude that that's a different subject matter than what was set forth in the original complaint. Is that the test for this court, same subject matter, if same subject matter relates and therefore, I guess, relates back? I think it's a jurisdictional issue and that's what the defendants have raised. The original complaint, referencing that same subject matter, had jurisdiction over the subject matter and the persons that were actually... Is that a term of art, same subject matter, is that what our test is as we weigh this argument? It's the Bryson case. I believe it is the same subject matter as what they discussed. Okay. I think that's a 96 case in the Supreme Court. Even if it's the same transaction of occurrence, I think it's the same... Your argument would be the same, correct? Correct. But in any event, the circuit court, when it ultimately dismissed this, did not really discuss the original complaint. And there's no... I don't think there's any way to conclude on the record that the plaintiff did not have that subject matter, that transaction or occurrence before the court and the declaratory judgment action originally and jurisdiction over the parties. And that's what the Reagan case is about, which is cited in the Fisher case. Basically, the issue of whether or not you've obtained leave to amend a complaint against parties who are already before the court is not a jurisdictional issue, because jurisdiction already exists. What the defendants are trying to do, what they're saying is that we didn't comply with all the procedural requirements of the administrative review law in order to obtain jurisdiction over the subject matter and over them. Our position is, and I believe this is supported by the cases, the Reagan case, which is the Supreme Court case, and the Fisher case, jurisdiction already existed. So it wasn't that the amended complaint was not the magical document that created jurisdiction in this case. So, from our point of view, we already had jurisdiction. And all we did was include that before the original complaint was directed at what the administrative body was about to do, the third count was directed at what the administrative body did. And I think it's important. The cases talk about whether leave to amend is directory or not. And I think the Fisher case says it is directory, and it struggled with that concept. And I think that's very similar to ministerial. It's not necessarily discretionary. Basically, what the Fisher case says is that the court can just order this or go ahead and grant leave to amend as a matter of routine or as a matter of course. And that's kind of what directory means. And we had asked the court to do that. And if you look at the record, it's actually in the appendix as A10, on December 23, 2010, the court did just that. There were no parties present. The court pulled out the file, reviewed it, made an entry, asked the clerk to make an entry that showed the amended complaint is on file. And on that day, the judge actually said, motion for leave to file the amended complaint on file dated October 20, 2009, with the first amended complaint attached. Mr. Boyles, why invite this argument, though? Why wouldn't somebody in your situation just go ahead and file the complaint for administrative review as a separate cause of action within the 35 days? Why leave yourself open to this argument, even? Because in 2009, I was in front of the 3rd District Appellate Court on a claim-splitting issue. To me, you're splitting the claim if you file another separate lawsuit with respect to the same subject matter, same transaction or recurrence, the same hearing in a whole different lawsuit. That invites a motion to dismiss just on a different basis that it's claim-splitting. Have you ever been successful in getting a trial court to interfere with an administrative hearing on issues of evidence? I've never tried it before. I've never tried it before. And I've also never been successful in having an administrative body entertain that motion seriously. Under the law, the administrative body brilliantly has expertise, and if they have expertise at all, they only have expertise in the statute which creates them. There's no, if there's any court case that would say that. It seems to me like such a long shot. I was a trial judge for 17 years, and if somebody came before me asking me to interfere with an administrative hearing and tell the administrative law judge what they could or couldn't hear, I'd be very unlikely to do that. And this court never did do it. The trial court in this case never did it. That's correct. But also never dismissed it. Right. If it comes down, I think the court, the statute on statutes is clear. The Fisher case says that the rules of amending a complaint are pretty clear. They've all evolved towards amending a complaint to file on the date that it's submitted with the clerk. And there's a case, I think it may be Reagan, which says the only court personnel that could change that particular date is the judge. And if you look at what happened on the 23rd, it's not clear that the judge changed the date from October 20th of 2009. That's the 10 in the appendix. There's no order in this case where the judge says that the amending complaint was not filed on October 20th, 2009, but was instead filed on December 16th, 2009. And of course, the documents file stand for October 20th, 2009, which is seven days after the administrative decision. Moving on from that issue, which I think is the driving issue as to why the court dismissed it, but the court's order also credits every argument made by the defendant. So there's this eavesdropping issue that apparently the court ruled upon or decided it wasn't going to rule upon. It's not entirely clear from the order. All it says is that it credits all of the defendant's arguments. And the defendant's arguments for that eavesdropping issue was moot, which is, I guess, the opposite of going into court too soon to try to get the agency to rule correctly. Here the defendant said, well, you can't go in afterwards because the agency already had a shot at it, so it's moot. And the court credited that argument, apparently. The issue of consent, which is based upon, the defendant's argument is based upon a consent eavesdropping. Well, why do we even have to reach that? Had the circumstances in this case, as found by the board, that your client was watching pornography in his squad car on the squad car computer? Yes, sir. Okay. And that's what you claim, apparently when they discovered that, that violated the eavesdropping statute? Our claim is they could not have discovered that, could not have proved that absent eavesdropping. Well, section 14-1E, defining electronic communications, requires that the sending and receiving parties intend the electronic communications to be private. Right. Further, well, just leave it there for the moment. Does the record show the nature of the pornographic website or whatever it was that your client was watching in his squad car? The chief testified it was obscene material. I don't think there's any actual photographs and evidence, if I recall correctly. Okay. Well, assuming that this was some pornographic website, as opposed to stuff that your client himself put on, or from some Anthony Weiner sort of fellow who sent it from himself to your client, assuming, and I think pretty strong inference, this is a lot of pornography out on the internet, and that's what he was looking at, what basis is there to conclude that this was intended to be a private communication between the porno-purveyors and your client? The record establishes that part of what was going on was through password-protected accounts. So, at a minimum, at least part of it involved password-protected accounts. So this was intended to be a private communication between the porno-purveyors and the multi-thousands of people out there. They're sending it to anyone who's got a password-protected account. I would agree that's correct. Anything suggesting that somehow this was a private communication between them and your client is what private communications kind of mean, especially in the eavesdropping statute. That is, when I pick up the phone and call you, that's a private communication. I hesitate to go down this rabbit hole, but yes, there were. Well, you know, what we need to hear and see, Counsel, because if it sounds to me like this is, let me be more clear, using something we're kind of familiar with. So is it a private communication between Comcast and me because they've shouted out there, and I've turned on the channel on my TV, and there's the cupcake. Is that a private communication? No, sir. No, sir. Well, but, you know, I've just turned the channel on. If I didn't do that, I couldn't get it. Correct. Okay. Now, what is there about the porno purveyors sending out their stuff that would be different? Because I agree with you, this is not a private communication from Comcast. But what's different between what Comcast is doing and the porno purveyors with regard to your client? Well, in addition to the password-protected information, there were solicitations, shall we say, or communications, actually, for lack of a better term, like a Craigslist situation. I couldn't understand what you just said. What? A Craigslist situation. There were some actual one-on-one communications. I don't know that they were instantaneous. It may have been a message left and then a message later returned. But there was some of that. Not all of it. I can't represent to the court that it was all that way. But there was some two-way communication. Well, what is the record before a show? All of those things. All of those things. It demonstrates that there was personal communications between your client and these people back and forth kind of stuff? There was some. There was some. There was also, I think what you're talking about is, you know, obviously when you first go to a website, which we've all done, you know, maybe that is not private. At the same time, nobody knows necessarily that you're going to that website. And that's not generally contrary to like sitting on a couch and watching TV. TVs are generally accessible to other people. All of the evidence in this case is that he was alone in a squad car and that nobody else was around. Nobody oversaw any of this. Nobody overheard it. So I think that's still private. As to whether or not that's sent out to thousands or millions of people, sure it is. And intended to be private. What evidence in the record is that the poor purveyors intended their communications to be private? They're not in the privacy business exactly, are they? They're in the business of making money. Well, and they make money by having as vast an audience as possible. Correct. The statute says this has to be intended to be a private communication. Correct. How does that work? It's still private. It's not privileged. Is that like Comcast is private when they send their Cub games to my TV? No, sir. Initially, like I said, the first click, first visit of the site may not be private. So some of it is private and others is not? Comcast is completely a one-way communication to you. Once you are sitting in front of that computer and you start selecting how you want that communication to go, where you're going to go and where you're not going to go, I believe that is more interactive. And by the way, privacy, that's another thing. This was a city squad car and the city rules say don't be watching porno? Absolutely not. Is that right? Pardon? City rules do not say that. What do the rules say on this subject? It's restricted to city business? It might say that. Okay. Now, using as another example, we accept your argument. My distinguished colleague, Justice Turner, has a couple law clerks working in his office, one of whom wants to spend some time looking at pornography on his office computer. If we accept your argument, I guess he is both not supposed to check that out. If he does check it out, no harm, no fault. Is that right? He's the one that brought up that. I didn't. Yes, that's true. But I just want to find out, you know, this might have bigger ramifications than we had originally thought here, Counsel. It depends on what has happened before that. And you brought up the issue of, you know, what were the employees notified of? What were the clerks notified of? So if the state says these are computers that are supposed to be restricted to state business, would that cover don't be looking at pornography? I do not believe that's enough. It would also have to say in any... So they have to say, and by the way, we mean don't be looking at pornography or otherwise it's not covered. No, sir. It would have to say, and by the way, what you do on this computer is something that we can... that we will check up on. We do have access to this. Oh, you mean they have a right of... Isn't that implicit? Doesn't he know that as an officer when he's told you can only use the mobile data terminal for law enforcement purposes? And not in any way that would discredit the police department. Not under prior cases involving private telephone conversations over lines which the officers would know are recorded. So I'm at risk in my office if I haven't recently told my clerks, by the way, you know, better cut out the pornography on the state computer. Not only can they do it, but I'm at fault for checking it out and discovering it. If you install a secret monitoring program without bothering to check with the state's attorney... The answer is yes. If you take that step... So I'm a felon under the statute for having discovered my clerks using the state-issued computers for reviewing pornography. Not if you merely happen upon it. Not if you haven't taken the steps of secretly monitoring their activity. So I want to check and see what's on their state-issued computer that they have to work on my office. I'm a felon if I check on that and discover their pornography stash. I would say you're a felon if you install a secret monitoring program. What is that? I don't even know what that is. What are you talking about, a secret monitoring program? Well, the chief admitted they installed a secret monitoring program. What happened was the chief was monitoring all of the client's Internet activities for a period of 30 days. Everything. That is eavesdropping. So I can't monitor, I can't go back and check on the state computer what my clerks are doing? That's a bad thing? That is... Should I ask for a minimum penalty when I'm convicted as a felon for that offense? We may be talking about two different things. There's a difference between Internet history and where a person has been, and then secretly monitoring what a person is doing in real time as they're doing it, which is what happened in this case. It's an overhear. It's just an overhear by computer. You said the first click is probably not private. Well, what if the board said the first click was on pornography? That's enough to discharge you. Isn't that the end of this matter? No, sir. It wasn't the subject matter that he was terminated for. It was 24 hours. They had monitored him through the secret monitoring device and decided that he had spent 24 hours doing this only because of the monitoring. It wasn't just the subject matter. And I think there was arguments from counsel at the hearing that, you know, hey, this is going to happen, the subject matter is going to happen. It was the amount of time that he spent doing obviously not work-related items. Do you have time for a rebuttal? Thank you. Mr. Myers or Mr. Sikwinski, whoever is going first? Okay, thank you. Good morning, Your Honors. Good morning. My name is Steve Myers. I represent the Board of Fire and Police Commission for the City of Clinton. And I think there are two issues before this court. I think the first issue is rather that Counts 1 and 2 of the officers' complaint were rendered moot, which I believe they were because the Fire and Police Commission, those counts asked the Fire and Police Commission to do certain things. The Fire and Police Commission went ahead and had a hearing before the circuit court had taken any action. So those matters are embroiled within that hearing. So I think because that was pending, that solves for me the issue of whether the amended complaint relates back to the original action because I think they're distinct. I think the second issue involves this Fisher case. And I think the issue before the court is rather the rule that was established at Fisher will be extended to jurisdictional issues. In Fisher, I think that involved an amended complaint, and it involved raising this affirmative defense of the statute of limitations. And in this case, if the same rule applies, if the rule is going to be that the effective date of the filing of the complaint will be the date the motion to amend is filed, well then we've extended that on to a jurisdictional issue of the 35 days in which to raise an administrative review appeal. So personally, we can live with it. We think it's an extension of that rule, and that's the issue before the court. That's really all I have. Thank you. Counsel? Nick Citwinski for Chief Reedy. I'll try to be as brief as Steve. I have gotten to know Chief Reedy on a personal basis over the last 15 years, and I've called him many things, but he is not a felon. Okay? Not yet. Not yet. What are his distinctions? I agree with what you mentioned before, Your Honor. The record does not show any personal communication between Officer Hurst and the websites he was accessing. The evidence that we put on was a record of viewing, of viewing adultfriendfinder.com and a few other websites that I don't think would be appropriate for me to name them. They're in the record. You can see that. But if you review the record, there is no communication between the officer and the website. We have evidence only of viewing, 27 hours of viewing hardcore, obscene, pornographic material, not just indecent material. Okay? So that's no viewing, no communication. Viewing is not a communication, and also there is implied consent, if not expressed consent. The record will show that Officer Hurst did sign a statement saying, you recognize the rules and regulations, one of which says you're going to use the mobile data terminal for official business only and you will not be using it in any manner that would bring disrepute to the department. Twenty-seven hours within a one-month period of hardcore pornography, I think brings disrepute to the department. I agree that also the second aspect is there is no sufficient closeness in the relationship between the amended complaint and the initial complaint. The initial complaint was filed May 15, 2009. That contained counts one and two, asking the court to enjoin the Board of Fire and Police Commission from doing something. On August 13th and 14th of 2009, by virtue of the fact that the hearing was conducted, those two counts were rendered moot. There was no injunction issued by the court. There was no motion to stop the hearing so the court could make a determination on those two counts. The hearing did conclude the fact that those two issues were moot. Did anybody move to dismiss that complaint as moot? No. So the complaint was still pending? The complaint was still pending on August 13th and 14th. There was no action taken to stop the Board of Fire and Police Commission from conducting those two days of hearings. On October 13th, the Board issued its order to discharge. On October 20th, there was a motion for leave to file an amended complaint, as well as an attached amended complaint to it. Did you receive a copy of that? Yes, there was no dispute on that. In short fashion, on or around October 20th? Yes, on October 20th. That motion sat there until on or around, I believe, December 16th, 2009, when the judge conducted a hearing and issued his finding. Is it your position that it was the obligation of counsel to get that motion heard within the 35 days after the decision? Absolutely. I'm sorry, it's not in my job description to do that. I wasn't suggesting it was. I'm just asking if he had called it up for a hearing and gotten the order entered within that 35 days, then you would have been fine. It wasn't the fact that he filed the amendment. It was that he just didn't get it heard fast enough. He didn't move on it. He didn't move on it. Is there a procedure or practice in, is it DeWitt County that we're talking about? Yes. Is there a procedure or practice there on these routine motions? Are they considered routine and presented to the judge without the other side? No. Is there a local rule? Not to my knowledge, no. Not to my knowledge, no. So not only is there that lack of relationship to Count 3 to Count 1 and 2, also you have a code of civil procedure here in 616B, and you have to have a motion granted before something happens. This isn't federal procedure. This is Illinois civil procedure. And as held in subsequent to Fisher, as held in Rubell v. Pfizer, which is a 2003 case, in order for leave, in order for the amended complaint to supersede the original complaint, leave actually has to be granted. Otherwise, why have that civil procedure? In Illinois, it is not a matter of course to amend the complaint. You have to ask the court for permission to amend the complaint. So it's our position that that amendment was not filed until December 16th when the court issued its order. It wasn't unfiled on October 20th. But did the filing of the motion to amend toll that filing period while the motion was pending? It's my position, no. And it's also the position in Rubell v. Pfizer at 771 Northeast 2nd, 505, that not until leave was granted on December 16th did the amended complaint supersede the initial May 15th complaint. What about Fisher v. Senior Living, which is a Fourth District case? That's a Fourth District. Pfizer is a U.S. District Court case. And in Fisher, you have there a minor technicality. The court did make a decision within the time frame. It just never signed the order in a timely fashion. That minor technicality should not then be expanded to cover administrative review under the Illinois law to somehow expand the 35-day rule. I want to note that in the Fisher case, one of the things the appellate court looked at was whether or not there was a risk of manipulation of the statute of limitations. And it found in that case there was not a risk of manipulation because counsel substantively performed their duties. Well, what's the risk here of manipulation? You could have moved to have a hearing on that initial complaint. But what I'm getting at, I guess, is the fact that they filed the motion to amend, attached a copy of the proposed amended complaint within seven days of the decision, and you received a copy of that on or about that time. So where's the manipulation? In other words, he didn't rush in on the last day, file a motion to amend, not attach the complaint, and try to give himself more time. He had everything together, ready to go. It just didn't get signed by the judge or called up for a hearing. But you were aware it was there and it was served on you, in other words. But even in his own filing, there's an admission that the amended complaint was not yet filed in court. I would like to bring to your attention, on paragraph four of the motion for leave, he states, quote, If this motion is granted, respectfully request that the amended complaint be filed in standard. In other words, not until and if the motion is granted would the amended complaint be filed. Didn't the trial court judge indicate that as a matter of routine, he has always allowed motions to amend a complaint? He's never denied one? No. He indicated that on December 16, 2009. He said, I never deny these things. Right. On December 16, 2009. Right, but that was what he said on that occasion. He said, I've never denied one of these. I always allow them. Mm-hmm. But there was a ruling on December 16 by the judge. I always do that. If there was some representation on October 20, like in the Fisher case, where somebody from the court said, oh, we usually don't deny that. Don't worry. Then I wouldn't be here arguing with you. But even after the filing on October 20, the record shows that counsel sent a letter to the circuit clerk, again showing an admission that he recognized the amended complaint was not yet filed, when he states, quote, to the circuit clerk in his October 30th letter, quote, until that leave is granted, I would assume defendants are not obligated to respond to it. I therefore seek your assistance in obtaining an order granting leave to file an amended complaint along with a docket entry representing that the amended complaint has been filed. And that was done within the 35 days too, right? That was done within the 35 days, but it's an admission that he recognizes that the amended complaint has not yet been filed. But he's asking the clerk to get the judge to sign the order. What can he do to force the judge to sign the order allowing the amendment? Motion it up for a hearing sooner than December 16, 2009. What if the judge doesn't have a date to give you prior to December 16? Or what, you know, then what? You're out because the judge couldn't fit you into a schedule? Even though you've taken every step you can to get your amended complaint filed within seven days of the decision of the agency? Not the second guest counsel for Mr. Hurst. I would file the complaint separate and distinct. I'd play with the 39 days. Well, I think his explanation was splitting of claims. He's running with that issue before. You don't think that is an American? Respectfully, no. I consider that May 15 filing rendered moot on August 13th and 14th. I don't think there's a claim to split because that initial claim on May 15th died with the conduct of the hearing. But technically it's still pending in front of the court, isn't it? Nobody came in to dismiss it as moot or to call it up for a hearing or anything. It's sitting there. Correct. It's languishing there. Technically, yes, you're correct. Before you're out of time, counsel, on the question of privacy, does the fact Hurst accessed a password-protected account make any difference? No. Why not? He accessed numerous websites, some of which needed a password, some of which did not. Does the record reveal that? It does not reveal which sites needed a password and which did not. I should be more clear. Does the record reveal that he accessed some sites for which a password was not necessary? The record won't reflect that. It just reflects numerous sites were accessed. You don't know. In response to Justice Turner's question, you were saying that, if I understood you correctly, some sites required a password and other sites did not. Correct. I accessed them myself without a password. But you've just now told me, if I understand you correctly, that you can't say that. I can't say what I'm talking about. Is it, in fact, the case, does the record show, that the, what's his name, Mr. Hurst, accessed some of these pornographic sites and, to do so, he didn't need a password? The record does not show which sites he needed a password. Does it show any sites? Yes. Does the record affirmatively show that he accessed any pornographic sites for which he did not need a password? No. So then, I don't understand your earlier answer to Justice Turner. You seem to be giving conflicting information here. There were numerous sites. The record shows there were numerous sites. Counsel for plaintiff tried to show, put into evidence, that there had to be a password. He could not identify which sites needed a password. When you say he tried to, he didn't succeed in showing that, or what do you mean? To be very honest with you, the hearing was about three years ago, two years ago, so I don't recall specifically what was transpired, but there was no effort on our part to introduce evidence to identify which sites needed a password and which sites did not. Well, more precisely, my question was, does it make any difference whether a password is needed? On the question of privacy. No. Because you're accessing websites that go out to thousands, hundreds of thousands of clientele that do not intend it to be private. How does a password affect any of that? Once you get onto the website, you need a password to go from that point to a more progressed pornographic point. Okay. Thank you, counsel. Thank you. With respect to the jurisdictional issue, the time limitation issue, I really think the court would have to find that plaintiff lost jurisdiction and then had to require it to credit the defendant's arguments, which I don't think we can find on this record. And again, I cannot say, I cannot represent to the court that I called asking the judge for dates, but I also cannot say that if I had called asking for dates for a hearing to notice of the motion of complaint that I would have gotten a date probably by that time within the next 20-some days. So I think the defendants are faulting plaintiff for events which may have been out of our control. With respect to, it's there so I guess we have to deal with it. With respect to the pornographic issues, there was some communication. I think the first website that Mr. Cichwinski referenced was called adultfriendfinder.com, which is kind of like the Craigslist reference I made earlier. The site, the name of the site has something to do with what the site does. There were messages left. There were messages retrieved. It was not instantaneous communication like over a telephone, but there was some communication there. Does the record show that passwords are required for all the pornographic sites that your client accessed? No. Well, then why should we assume that that's the case? I'm not saying you should assume. Some of the information. It's a time issue. Well, if he just gets on a computer and signs on to some website that is pornography and he wasn't required to identify himself to make it more of a personal sort of communication or discussion, however you want to term it, isn't that rather different than a situation where a password is involved? Ahem. It may very well be. In fact, isn't that essentially, if there's no password involved, indistinguishable from the Comcast cub game that I just turn on my TV and I dial up and there it is? I still believe internet electronic data transfers is what electronic communication is. I still believe that's more personal because it's not generally meant to be viewed by more than one person. You mean it's designed to be a personal communication between the porno purveyors and the 185,000 people who are tuning in? To some degree, yes. Based upon the material. That type of material I cannot imagine is designed to be viewed. Well, when we're talking about intended as a private communication, would it be correct to say that from the point of view of the porno purveyors, there's nothing the least bit distinguishable or unusual about Mr. Hurst as opposed to any of the other 149,000 people? Wouldn't that be correct? Yes, that would be correct. They're just happy, hey, we got this guy and we got other people. There's no special message. When we're talking about a private communication, arguably a password maybe, and back and forth, something, an adult, a friend finder, whatever it's called. If you just turn it on and there it is, it's hard to see how that could possibly be deemed private. Agreed. But the issue is not necessarily solely the content. Mr. Cichwinski referenced 27 hours. That was the driving force. That's what the charges are. Does it have to, well, this is the question I was asking earlier. Is there some kind of component or percentage? I mean, you know, if half of it required a password and half of it didn't, or indeed if any of it, I mean, if it was 10 minutes of non-password required pornography on this computer in the squad car, why wouldn't that be enough? I believe this court would say, or any court reviewing it would say, you know that was wrong, you shouldn't have done it, but we're not going to terminate your appointment for 10 minutes. So we'd have to second guess the punishment meted out by the administrative agency that thought this was the appropriate punishment? In practical terms, yes. And if you look at the cases, the hundreds of court of Barclays commissioners' cases, that happens all the time. Even though the courts say it's a manifest way to be open standard for review of the law, we will not review the punishment. There are several cases that I've relied upon that do exactly that, including Kale out of the 3rd District. Kale is from 1981. The 3rd District perhaps is more or less reluctant to second guess than we are, Counsel. Thank you, Counsel. Thank you. The case is submitted. Court stands in recess until 1 o'clock.